IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SANDBOX SOFTWARE, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 18-1649 (MN) |
| | ) | |
| 18BIRDIES, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM ORDER

At Wilmington this 19th day of June 2019:

As announced at the hearing on June 14, 2019, IT IS HEREBY ORDERED that Defendant 18Birdies, LLC's ("Defendant" or "18Birdies") Motion to Dismiss (D.I. 7) is GRANTED and Defendant's Motion to Transfer (D.I. 14) is DENIED AS MOOT.

Defendant's motion to dismiss was fully briefed as of February 15, 2019 (*see* D.I. 7, 8, 9, 13, 19, 20; *see also* D.I. 23),[1] and the Court received further submissions regarding which Supreme Court or Federal Circuit case each party contends is analogous to the claims at issue in Defendants' motion to dismiss (*see* D.I. 25, 26; *see also* D.I. 24). The Court carefully reviewed all submissions in connection with Defendant's motion to dismiss, heard oral argument (*see* D.I. 28) and applied the following legal standard in reaching its decision:

## I. LEGAL STANDARDS

### A. Motion to Dismiss for Failure to State a Claim

In ruling on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept all well-pleaded factual allegations in the complaint as true and view them in the light

---

[1] Defendant's Motion to Transfer was fully briefed as of March 4, 2019. (*See* D.I. 15, 16, 17, 21, 22).

most favorable to the plaintiff.  *See Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010); *see also Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 232-33 (3d Cir. 2008).  "[A] court need not 'accept as true allegations that contradict matters properly subject to judicial notice or by exhibit,' such as the claims and the patent specification."  *Secured Mail Sols. LLC v. Universal Wilde, Inc.*, 873 F.3d 905, 913 (Fed. Cir. 2017) (quoting *Anderson v. Kimberly-Clark Corp.*, 570 F. App'x 927, 931 (Fed. Cir. 2014)).  Dismissal under Rule 12(b)(6) is only appropriate if a complaint does not contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).  "[P]atent eligibility can be determined at the Rule 12(b)(6) stage . . . when there are no factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law."  *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018).

B.    <u>Patent-Eligible Subject Matter</u>

Section 101 of the Patent Act provides that anyone who "invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof" may obtain a patent.  35 U.S.C. § 101.  The Supreme Court has long recognized three exceptions to the broad categories of subject matter eligible for patenting under § 101:  laws of nature, physical phenomena, and abstract ideas.  *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208, 134 S. Ct. 2347, 2354 (2014).  These "are 'the basic tools of scientific and technological work' that lie beyond the domain of patent protection."  *Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 569 U.S. 576, 589 (2013) (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 77-78 (2012)); *see also Alice*, 134 S. Ct. at 2354.  A claim to any one of these three categories is directed to ineligible subject matter under § 101.  "[W]hether

a claim recites patent eligible subject matter is a question of law which may contain underlying facts." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018).

Courts follow a two-step "framework for distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts." *Alice*, 134 S. Ct. at 2355; *see also Mayo*, 566 U.S. at 77-78. First, at step one, the Court determines whether the claims are directed to one of the three patent-ineligible concepts. *Alice*, 134 S. Ct. at 2355. If the claims are not directed to a patent-ineligible concept, "the claims satisfy § 101 and [the Court] need not proceed to the second step." *Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 880 F.3d 1356, 1361 (Fed. Cir. 2018). If, however, the Court finds that the claims at issue are directed a patent-ineligible concept, the Court must then, at step two, search for an "inventive concept" – *i.e.*, "an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'" *Alice*, 134 S. Ct. at 2355 (alteration in original) (quoting *Mayo*, 566 U.S. at 72-73).

### 1. Step One of the *Alice* Framework

At step one of *Alice*, "the claims are considered in their entirety to ascertain whether their character as a whole is directed to excluded subject matter." *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1346 (Fed. Cir. 2015); *see also Affinity Labs of Texas, LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1257 (Fed. Cir. 2016) (step one looks at the "focus of the claimed advance over the prior art" to determine if the claim's "character as a whole" is to ineligible subject matter). In performing step one of *Alice*, the Court should be careful not to oversimplify the claims or the claimed invention because, at some level, all inventions are based upon or touch on abstract ideas, natural phenomena, or laws of nature. *Alice*, 134 S. Ct. at 2354; *see also McRO, Inc. v.*

*Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1313 (Fed. Cir. 2016). "At step one, therefore, it is not enough to merely identify a patent-ineligible concept underlying the claim; [courts] must determine whether that patent-ineligible concept is what the claim is 'directed to.'" *Rapid Litig. Mgmt. Ltd. v. CellzDirect, Inc.*, 827 F.3d 1042, 1050 (Fed. Cir. 2016).

## 2. Step Two of the *Alice* Framework

At step two of *Alice*, in searching for an inventive concept, the Court looks at the claim elements and their combination to determine if they transform the ineligible concept into something "significantly more." *Alice*, 134 S. Ct. at 2355; *see also McRO*, 837 F.3d at 1312. This second step is satisfied when the claim elements "involve more than performance of 'well-understood, routine, [and] conventional activities previously known to the industry.'" *Berkheimer*, 881 F.3d at 1367 (citation and internal quotation marks omitted); *see also Mayo*, 566 U.S. at 73. "The inventive concept inquiry requires more than recognizing that each claim element, by itself, was known in the art. . . . [A]n inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces." *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016). Whether claim elements or their combination are well-understood, routine, or conventional to a person of ordinary skill in the art is a question of fact. *Berkheimer*, 881 F.3d at 1368.

At both steps of the *Alice* framework, courts often find it useful "to compare the claims at issue with claims that have been considered in the now considerably large body of decisions applying § 101." *TMI Sols. LLC v. Bath & Body Works Direct, Inc.*, C.A. No. 17-965-LPS-CJB, 2018 WL 4660370, at *5 (D. Del. Sept. 28, 2018) (citing *Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288, 1294 (Fed. Cir. 2016)); *see also Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1334 (Fed. Cir. 2016).

## II.    THE COURT'S RULING

The ruling to grant Defendants' motion to dismiss (D.I. 7) under Federal Rule of Civil Procedure 12(b)(6) was announced from the bench at the conclusion of the hearing, and the ruling to deny Defendants' motion to transfer as moot (D.I. 14) was announced from the bench immediately thereafter.  The Court's rulings are as follows:

> . . . I'm prepared to rule on the pending motions. I will not be issuing written opinions, but I will issue an order that states my ruling.
>
> I want to emphasize before I get into the rulings that while I'm not issuing a written opinion, we have followed a full process for making the decisions that I'm about to state.
>
> There was full briefing on each of the pending motions. There were additional submissions regarding what each party viewed as the most analogous case and there has been extensive oral argument here today. All of the submissions and the arguments have been carefully considered.
>
> Now, as to my rulings, as an initial matter, I am not going to read into the record my understanding of Section 101 law. I have a legal standard that I've included in earlier opinions, including somewhat recently in *Kroy IP Holdings v. Groupon*, Civil Action No. 17-1405. I incorporate that law and adopt it to my ruling today, and I will also set it out in the order that I now will issue.
>
> *            *            *
>
> Moving to the second case, *Sandbox Software v. 18Birdies*, Civil Action Number 18-1649. In this case there is one patent at issue, United States Patent Number 9,737,803. The patent generally relates to a method and mobile computing devices for multiple players to play games in the real world and to track one another's progress using mobile devices.
>
> Defendant 18Birdies has moved pursuant to Rule 12(b)(6) to dismiss arguing that all of the claims of the '803 patent are directed to patent ineligible subject matter. After reviewing the entire record, hearing argument, and applying the law as I understand it, I agree with the defendant. The claims of the '803 patent are directed to patent ineligible subject matter and I will grant defendant's motion to dismiss.

Defendant treats claim 1 of the '803 patent as representative. In [its] papers, plaintiff does not challenge that. As I noted earlier, the test for whether a claim is representative is whether the representative claim and the others are substantially similar and linked to the same abstract idea. As discussed below, I find that claim 1 is representative of the other claims of the '803 patent.

As to step 1 of *Alice*, 18Birdies argues that although claim 1 is directed to the abstract idea of people playing a game where one player observes the other player and keeps score. Sandbox in its papers argues that the claim is instead directed to a tailored and narrowly focused method or device that requires a multistep verification process for moves relating to a game. Today, Sandbox added that the claims are directed to taking the gaming environment and combining it with geolocation to put people together to interact and solve the problem of social isolationism. Claim 1 of the '803 patent, however, is not directed to specific improvements to software or playing interfaces in a distributed computing environment. And to the extent that plaintiff points to geolocation as the crux of the claims not being directed to an abstract idea, the Court understands those limitations to refer to people being in the same location, tantamount to organizing human behavior. To the extent, plaintiff is referring to the location detection means referenced in certain dependent claims, the Court finds that to refer to generic GPS is not an improvement in technology. Thus, unlike *DDR Holdings* and *Core Wireless*, the claims at issue here are not directed to specific improvement in the capability of or functioning of computers or technology. Instead, when viewed as a whole, the claim is directed to the abstract idea of playing a multiplayer game and keeping track of its progress, again, a form of organizing human activity.

As *Alice* itself recognizes, processes for organizing human activity are not patentable. And the Federal Circuit has repeatedly found that patent claims directed merely to organizing human activity are directed to abstract ideas.

Sandbox notes that the claims use mobile devices to allow for game play and tracking. But that does not mean that the claims are directed to a nonabstract idea. As the Federal Circuit has recognized, if a claimed invention only performs an abstract idea on a generic computer, the invention is directed to an abstract idea at step 1. That's the *BSG* case, 899 F.[3d] 1281 and 1285.

Again because there appears to be no dispute that claim 1 is representative, I find that all of the claims are also directed to the

abstract idea of playing a multiplayer game and keeping track of its progress.

As to step 2 of *Alice*, 18Birdies argues that there is no inventive concept because the claims recite only generic computer implementation of the abstract idea and, in particular, the only technology recited in the claim are generic mobile devices, a mobile device game application, verification and a central server.

Sandbox counters that the inventive concept is interactive communication through a third-party central server. Sandbox asserts that the claims describe in detail how to achieve interactive play in a way that improved upon the prior art by claiming such steps that allow the parties to observe each other while playing. In their papers, Sandbox asserted that this was claimed in elements such as the entering, transmitting, verifying steps. To the extent that Sandbox now says that the inventive concept comes from geolocation as referenced by the language of the claim observation of another player's action, the Court finds that that is tantamount to improperly using an abstract idea to supply the inventive concept.

There is, thus, no inventive concept sufficient to transform the abstract idea of playing a multiplayer game and tracking its progress into something patent eligible, the claim elements are generic computer components functioning in conventional ways and their ordered combination is the only logical order.

A few examples, according to the specification, the mobile device claimed may be one of many generic yet known mobile devices such as mobile phones or PDAs. That's in the patent at column two.

The mobile device is equipped with a commercial operating system and communicates via conventional means, again, two.

Similarly, the entering, transmitting and verifying steps that Sandbox points to in its papers are conventional computing steps performed by generic computers in their ordinary capacity. And they are largely functional limitations that do not transform the claimed abstract idea into something more, but are instead instructing that abstract idea just be applied to generic technology.

As to the central server called out by Sandbox in its papers, the specification provides that the central server is intended to represent any central computing device and it is not intended to

represent only computer servers. And that's at column 4 of the '803 patent.

Finally, I will address the cases the parties have submitted as being most analogous. Sandbox cites to *Aatrix Software v. Green Shades Software*, 882 F.[3d] 1121 from the Federal Circuit in 2018. That case involved claims directed to systems and methods for importing data from an original paper form into a viewable form on a computer so that the user can create manipulatable forms and reports. I disagree that the claims in *Aatrix* are analogous to those in the case before me. In *Aatrix*, the claims were to data processing systems with some tangential tie to technology. In contrast, here, the claims recite the performance of a real world activity, playing a game, as implemented on generic mobile devices.

Similarly, to the extent that Sandbox cites to *Aatrix* to suggest that there are factual issues here as to step 2, the Court finds that here there are only well-known and conventional computer components and processes recited in the claim.

18Birdies cites to *In re Marco Guldenaar Holding B.V.*, 911 F.3d 1157 from the Federal Circuit in 2018, which involved claims directed to a method of playing a dice game where dice have certain markings and allowing for payouts of wagers after rolls. 18Birdies also cites to *Planet Bingo v. VKGS*, 576 F. App'x 1005 from the Federal Circuit in 2014 which involved claims directed to a computerized system for inputting, storing and retrieving bingo numbers.

In *MGH*, the Federal Circuit agreed that the claims were directed to the abstract idea of rules for playing a dice game based on striking similarities to other patent-ineligible claims to wagering games based on cards, and further, there was no inventive concept because the claims recite the steps of wagering, rolling dice and paying a payout, which were all conventional activities. The only arguably unconventional step was the printed matter on the dice, which fell outside the Section 101.

In *Planet Bingo*, the Federal Circuit agreed that the claims were directed to the abstract idea of managing/playing the game of bingo even though the method was implemented on a computer because the claimed steps of selecting, storing, retrieving two sets of numbers, assigning identifiers and comparing stored numbers with winning numbers could be performed on conventional computers and also mentally and, further, that there was no inventive concept because the claim only recited programs for

generic storing, retrieving and verifying steps, *i.e.*, it's simply conventional functions performed by computers insufficient to confer an inventive concept under *Alice*.

The Court agrees that both *MGH* and *Planet Bingo* are relevant cases here and support the conclusion that the claims of Sandbox's '803 patent are directed to patent ineligible subject matter.

At step 1, the '803 patent claims are directed to a method of playing and tracking a game as was the case in both *MGH* and *Planet Bingo* and, at step 2, *Planet Bingo* is particularly on point because there the abstract idea of managing a bingo game was implemented on a computer that performed conventional functions just like here, where the abstract idea of playing and tracking a game is implemented on mobile devices performing conventional computer activities.

So as I said, I'm granting the motion to dismiss. I understand that there is also a motion to transfer pending. I am prepared to deny that as moot. Is there any objection to that?

MR. DORSNEY: No objection, Your Honor.[2]

THE COURT: So I'm going to grant the motion to dismiss and the motion to transfer is denied as moot.

_Maryellen Noreika_
The Honorable Maryellen Noreika
United States District Judge

---

[2]    Mr. Dorsney is counsel of record for Defendant, the party requesting transfer to the Northern District of California.